Wilde J.
delivered the opinion of a majority of the Court. The question raised at the trial related to the extent of the defendants’ liability ; but it has been since argued that they are not by law at all liable in this "action, it being trespass against the heirs of the disseisor, who came to the possession by lawful title. And this is the principal question now to be determined.
An action of trespass, being a possessory action, cannot be maintained, unless the plaintiff had the actual or constructive possession of the property trespassed upon, at the time of the trespass. A disseisee, therefore, cannot maintain trespass against the disseisor for an injury done to the land after the disseisin, until he shall have gained possession by re-entry ; after which he may have an action of trespass for the intermediate damages or mesne profits during the time of the tortious dispossession. The law in such cases resorts to a fiction for the attainment of justice ; and supposes the freehold to have been all along in the rightfu. owner by a kind of jus postliminii ; and thus he is considered as having a constructive possession while the actual possession was in the disseisor. Liford’s case, 11 Co. 51. If, therefore, A disseise B, and C disseise A, and afterwards B *516 re-enter, he may maintain trespass against both C and A, f°r both are wrongdoers. 2 Rol. Abr. 554.
But it isiaid down in Bro. Tresp. pl. 35, that if a disseis- or makes a lease or feoffment, and afterwards the disseisee re-enters, he cannot, although he thereby reduces the possession to himself from the time of the disseisin, maintain an action of trespass against the lessee or feoffee ; because the lessee or feoffee came in by title. Bac. Abr. Tresp. G, 2. It was however decided in the case of Holcomb v. Rawlyns, Cro. Eliz. 540, that an action of trespass might be maintained in such case against the lessee or feoffee, notwithstanding the plea of title. This was denied to be law, in two subsequent cases, (Liford’s case, 11 Co. 51, and Symons v. Symons, 3 Car. 1, Hetley, 66,) and Lord Coke, in Li-ford’s case, refers to several ancient cases in support of his opinion, acknowledging at the same time that “ there was great variety of opinions in the books,” so that it appears that this point was not well settled in Lord Coke’s day ; and such has since been the infrequency of real actions in the English courts, that we look in vain for any further light in the modern English cases. But Lord Rolle, in his Abridgment, lays down the law in conformity with the decision of the court in the case of Holcomb v. Rawlyns, noticing Liford’s case to the contrary. 2 Rol. Abr. 554, Tresp. per Relation. In like manner the law is laid down by Gilbert and Comyns. Gilb. Ten. 47, 50 ; Com. Dig. Tresp. B, 2. Gilbert says, that the old law was in conformity with the opinion of Lord Coke, and the reason he assigns, why the feoffee’s title was formerly allowed though he came in by wrong, (or colorable title,) is because he anciently paid a fine to the lord.
Buller, in his N. P. 87, remarks on the law as laid down by Lord Coke in Liford’s case, and says, “ It may admit of doubt, for there are cases to the contrary, and the reason of the law seems to be with them.” So far, therefore, from feeling myself bound by Liford’s case as an authority, I am of opinion that the weight of authority is opposed to the decision in that case. And that this is the opinion also of the English courts may be inferred, I think, from their well- *517 known practice in relation to the action for mesne profits consequent to a recovery in ejectment.
It must be remarked however, that this action may be maintained without overruling Liford’s case, or disturbing the doctrine laid down by Lord Coke in relation to the lessees and feoffees of disseisors. The questions now raised for our consideration are, first, whether this doctrine is to be extended to heirs, claiming by descent ; and secondly, if it is, whether it is also to be extended to the heir, feoffee, or lessee of a disseisor, who after action brought for the recovery of possession shall wrongfully withhold it until judgment and execution.
No case has been found in which either of these questions has been decided or considered. They must therefore be determined by those principles and decisions which are most analogous.
Whatever may be the appearance of equity and sound law in the doctrine of Liford’s case, it will vanish when applied to an action for mesne profits against heirs claiming the estate by descent. For m the former case, as the lessee or feoffee pays, or may be presumed to have paid, an equivalent for the rents and profits to the disseisor, if he is held responsible for them to the disseisee also, he may be twice charged ; which can by no possibility happen in respect to heirs. In the one case, the disseisee may have a remedy against the disseisor ; in the other, he has no remedy, and the law is defective, unless he can maintain an action against the heirs.
In my judgment there is much weight in these distinctions. They have an important bearing on most of the arguments made use of by Lord Coke in support of his opinion in Liford’s case. We do not however think it necessary to take them into consideration in deciding this cause, it being the opinion of the majority of the Court, that the defendants W’ould be liable, if they had come into possession as purchasers. Admitting the plaintiff’s right of possession, which has been clearly established, we consider the judgment in the writ of entry conclusive for the plaintiff, as to the mesne profits accruing after the commencement of that action. It *518 ¡g well known, that such is the conclusive effect of a judgment in an action of ejectment. The right to mesne profits is a necessary consequence of a recovery in that form of action. The tenant is concluded by the judgment, and cannot after-wards, in an action for the mesne profits, be permitted to show a better title in bar, or a subsequent recovery by him of the same premises in another action. Adams on Ejectm. 335 ; Aslin v. Parkin, 2 Burr. 667 ; Bac. Abr. Ejectment, H ; Compere v. Hicks, 7 T. R. 723 ; Benson v. Matsdorf, 2 Johns. R. 369.
If then, on the facts appearing in this case, an ejectment could be maintained according to the English practice, it is difficult to assign any good reason why equal justice should not be dispensed in the forms of proceeding practised here. It is true that the demandant may recover in a writ of entry, notwithstanding the tenant’s right of possession, which would be a bar to an action of ejectment. The judgment therefore for possession in a writ of entry is not conclusive, indeed it proves nothing at all, as to the right of possession ; and that right must be shown by the plaintiff in his action for the mesne profits. In every other respect, it appears to me that a judgment in a writ of entry is as conclusive in establishing the plaintiff’s right to the mesne profits, as a judgment in an action of ejectment. That action is altogether a fictitious remedy introduced for the more convenient administration of justice, and would never have been allowed to change materially the important and essential rights of parties, so as to subject a man to damages for which he was not before liable in any form of action. This would have been an unwarrantable use of a legal fiction, giving new rights instead of a new remedy. Unless such was the effect of the introduction of the fictitious action of ejectment, it seems to me that it is incumbent on the defendants to show that the facts proved in this case would have been a bar to an action of ejectment. Lord Kenyon says, that trespass and ejectment stand on the same footing. 7 T. R. 728. Whatever would be a bar to an action for mesne profits after recovery of possession in a real action, ought to be a bar to an action of ejectment.
Having examined the authorities attentively, I have no hefi *519 ration in saying that ejectment may be maintained against the lessee or feoffee of a disseisor, and against his heirs, unless in case of a descent which tolls the entry. Not a case nor a dictum, I apprehend, can be found to the contrary.
The general rule is, that whatever bars the right of entry is a bar to the plaintiff’s title ; as a fine with non-claim, the statute of limitations, a descent cast, &c. Bac. A hr. Ejectment, E ; Adams on Ejectm. 241.
Ejectment being a possessory action, it is sufficient for the plaintiff to prove a possessory title. And generally ■ where there is a right of entry in the plaintiff, no actual entry is required.
But where an entry is necessary to rebut the defendant’s title, an actual entry is requisite, because until such actual entry the plaintiff has not the possessory title ; as in case of fine, which Lord Mansfield says is the only case where the plaintiff, having a right to enter, cannot maintain ejectment until after an actual entry. He says it was so settled in 1703, “by the opinion of all the judges, upon deliberation, and consideration of all the cases, and that so the practice had been ever after.” “ But where the entry is only neces-. sary to complete the landlord’s title, (as where a power to reenter is reserved to him in case of non-payment of rent,) there the confession of lease, entry and ouster is sufficient.” Goodright v. Cator, 2 Doug. 484 ; Oates v. Brydon, 3 Burr. 1897 ; Compere v. Hicks, 7 T. R. 727 ; Jackson v. Crysler, 1 Johns. Cas. 125 ; Adams on Ejectm. 90. But if a tenant for years levies a fine, that being a case not within the statute of fines, no actual entry is necessary ; the estate must be divested by the fine and by force of the statute, to render an actual entry necessary. Adams on Ejectm. 90. An actual entry is not necessary to avoid a fine without proclamations. Theré have been conflicting decisions on this point, but it seems now well settled. Doe v. Watts, 9 East, 19 ; Adams on Ejectm. 90 ; Doe v. Perkins, 3 Maule & Selw, 271.
From these authorities it seems very clear, that this is a case in which an ejectment, according to the practice in England and elsewhere, would well lie. And it is difficult to *520 believe that courts would allow parties to entitle themselves to recover profits after an ejectment, to which they would not otherwise be entitled ; and that this course of practice should have been so long continued without question.
It is supposed by the defendant’s counsel, that the conclusive effect of a judgment in ejectment upon the action for mesne profits is derived from the confession of the tenant, under the common rule, operating by way of estoppel. But this is denied by Lord Mansfield, in the case of Aslin v. Parkin, after a consultation with all the judges, who were unanimously of opinion that there is no distinction between a judgment upon a verdict, and a judgment by default. 2 Burr. 668.[1]
It has also been argued by the defendants’ counsel, that the plaintiff’s entry was tolled by a descent ca»t, and that the defendants had not only the possession, but the right of possession. If this position can be maintained, I admit that the plaintiff has no case. It is impossible that the defendants can be liable in a possessory action, if they had the right of possession. The case of Taylor v. Townsend, cited by the defendants’ counsel, depends on this principle. So also does the case of Cox et al. v. Callender, 9 Mass R. 533, which was argued and decided upon the ground that the plaintiff’s right of entry had been barred previous to the commencement of the writ of entry.
But this objection fails, in the case at bar, by the pro visions of the St. 32 Hen. 8, c. 33, which has been adopted and acted upon here from the earliest times of which we have any recollection or knowledge.
It is hardly necessary to remark upon one position of the defendants’ counsel, because if they could maintain it, it would not avail them. They deny that Thompson, the ancestor, can be considered as a disseisor; but if so, then the plaintiff was not dispossessed, for there is no pretence for saying that Thompson had a lawful possession. It is now, however, too late for either party to deny that Thompson was a dis *521 seisor. On this point the judgment in the writ oí entry is conclusive.
From this review of the authorities it appears to me, that there is no legal objection to the plaintiff’s right to recover; and we may allow ourselves to be guided by a sense of justice in our decision, without any apprehension that we shall in so doing infringe the established rules of law. But this right is limited to the profits after the commencement of the writ of entry. The doctrine of relation before referred to, only operates to make out the plaintiff’s possession ; it cannot make the defendants trespassers before their entry. Whether they are liable for the time intervening after entry and before the date of the writ of entry, is in this case so unimportant that it is needless to give an opinion. After the demand of possession, the defendants, by holding on, became wrong-doers. And the plaintiff is not estopped to show this by the writ of entry. He is only estopped to deny that the defendants came into possession by a colorable title, but this is not inconsistent with the allegation that the possession was wrongfully withheld afterwards.
This deforcement or wrongful withholding of the possession is, so far as it respects the present question, equivalent to a disseisin. The plaintiff has been unlawfully deprived of the possession of his land ; and the defendants have received the rents and profits which they have no right to retain. Of this injury the plaintiff complains, and we think both by law and equity he is entitled to an indemnity. The case of Pulteney v. Warren, 6 Ves. 73, was decided on a principle applicable to the present case. In that case the lessor had been delayed from recovering in ejectment by a rule of court and by an injunction, at the instance of the defendant, who ultimately failed both in law and equity. And the court decreed an account of the mesne profits against the defendant’s executors, solely on the ground of the delay caused by the defendant. But for this, a court of equity would not have enforced payment against the executors.
Upon the whole, the weight of authority is in favor of the plaintiff. The general rule is, that the disseisee, after re-entry, shall be considered as in possession from the time of the *522 disseisin, by relation. This case does not come within the exception made in LifonPs case. There was no deforcement in that case, and the reason given for the exception is, that it would be hard to make a man a wrong-doer by relation. An exception of such doubtful authority ought not certainly to be extended for the protection of wrong-doers ; and such we consider the defendants, although they came into possession by a colorable title.[1]

 See Brown v. Galloway, 1 Peters’s C. C. R. 291.

 See Stearns on Real Actions (2d ed.) 367 and note; Green v. Biddle, 8 Wheat. 1.
Assumpsit will not lie for use and occupation against a bond fide purchaser for a valuable consideration, from the heirs of a disseisor, after a descent cast, and without notice of the disseisin. Wharton v. Fitzgerald, 3 Dallas, 503. See Butler v. Cowles, 4 Ohio R. 203.